**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/18/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

CALVIN WESLEY

              *Plaintiff,*

v.

CITY OF LYNCHBURG, *et al.*

              *Defendants.*

CASE NO. 6:23-cv-00012

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on Defendant City of Lynchburg's motion to dismiss, Dkt. 10. Plaintiff Calvin Wesley filed suit against the City, as well as against specific Lynchburg police officers, in their individual capacities, arguing that the officers violated his Fourth Amendment rights by using excessive force when apprehending and arresting him. Additionally, he brings common law civil claims. He has conceded that his common law claims against the City should be dismissed, and they will be. His claim for injunctive relief will also be dismissed for lack of standing. However, because Wesley has sufficiently alleged facts supporting alternative theories of *Monell* liability, the City's motion to dismiss will be denied as to his § 1983 claims for damages.

## Background

Wesley was in the passenger seat of a pickup truck on March 11, 2021, when Officer Reed and other unnamed officers drove by the truck and recognized him. Dkt. 1 ("Compl.")

1

¶ 11.[1] Two officers stopped, exited their vehicle, and asked Wesley to get out of the pickup truck. *Id.* ¶ 12. Wesley cooperated. *Id.* ¶ 14. He asked the officers why he was being arrested, and they accused him of resisting arrest and threatened him with a police dog. *Id.* ¶ 15. More officers arrived to provide backup. *Id.* ¶ 16. Officer Reed and the other officers with him "cornered [Wesley] into the hinge joint of the open truck door with no path of egress," and when he again asked the reason for his arrest, Officer Reed "ordered the other officers to stand clear," before releasing his police dog on Wesley. *Id.* ¶¶ 17–18. The dog "caus[ed] puncture wounds, deep lacerations, and excruciating pain." *Id.* ¶ 19. While one officer held Wesley in a chokehold, the dog bit him again, and another officer slammed Wesley to the ground, handcuffing him. *Id.* ¶ 20. The dog again bit him, as ordered. *Id.* ¶ 21. After being "arrested for an outstanding misdemeanor warrant," Wesley was taken to the hospital, then taken to jail. *Id.* ¶ 34.

Wesley argues that "[t]here was no need to use any force against [him] at any time, but especially after he had been handcuffed." *Id.* ¶ 25. He contends that using the police dog against him "was objectively unreasonable," *id.* ¶ 26, and "[t]he LPD use of force policy that was applicable at the time clearly stated that use of [a] canine can be application of deadly force." *Id.* ¶¶ 26, 23. Further, "[t]he LPD use of force policy that was applicable at the time clearly stated that the use of a canine was prohibited when no physical threat or violence appeared imminent." *Id.* ¶ 24. When the dog was deployed against him, Wesley writes that he "was merely the subject of an outstanding misdemeanor warrant," and "no crime was ongoing," nor had any "severe crime [] been committed." *Id.* ¶ 27. He also contends that there was "no physical threat or violence" when the dog was deployed against him. *Id.* ¶ 28. Wesley argues that Officer Reed

---

[1] These facts are alleged in Plaintiff Wesley's Complaint and must be assumed true for purposes of resolving a motion to dismiss. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review).

deployed the dog against him "in retaliation for past incidents" in which Wesley was involved. *Id.* ¶ 31. (He does not elaborate on what those "past incidents" entailed.)

On December 20, 2021, Wesley and his wife were arguing at his wife's apartment. *Id.* ¶ 39. Officers Reed, Bryant, and Rowland "were dispatched to the area based on a reported domestic disturbance." *Id.* ¶ 40. When the police arrived, no outstanding warrants against Wesley existed. *Id.* ¶ 42. But "the officers discovered that a purported protective order existed that prevented contact between [Wesley] and his wife." *Id.* ¶ 43. Wesley "was not present when the police arrived at his wife's apartment." *Id.* ¶ 41. When he saw them arrive, he "left the area to avoid them." *Id.* ¶ 42.

The officers began looking for him. *Id.* ¶ 44. Officer Reed brought his police dog with him and began to pursue Wesley, who was unarmed, in a wooded area. *Id.* ¶¶ 45–47, 54. Officer Reed called for Wesley "to identify himself," "falsely claim[ing] to hold a warrant for [his] arrest, but [Wesley] refused to respond or to identify himself and kept walking." *Id.* ¶ 50. Though Officer Reed had been keeping his dog leashed, he "announced that he would let the dog loose," then did so. *Id.* ¶¶ 51–52. The dog "caus[ed] puncture wounds and deep lacerations" to Wesley and Officer Reed let the dog "bite [him] for several minutes." *Id.* ¶¶ 58–59. Wesley again argues that Reed "sicced the dog on [Wesley] in retaliation and to [] seek revenge for past incidents he had experienced involving [Wesley]." *Id.* ¶ 60.

Wesley contends that Officer Reed, "[a]fter an unreasonable delay," ordered his dog to release Wesley, then arrested him "for misdemeanor Fleeing from Law Enforcement and for feloniously Attempting to Maim or Kill a Law Enforcement Animal." *Id.* ¶ 64. Another officer (Officer Bryant) "took out a misdemeanor warrant against [Wesley] for Violation of a Protective Order." *Id.* ¶ 64. Wesley also alleges that Officers Reed and Bryant "each later falsified police

3

reports to state that [Wesley] had an outstanding warrant for his arrest before they arrived at the scene." *Id.* ¶ 70.

Wesley argues the Lynchburg Police Department ("LPD")'s facially constitutional policies "are routinely ignored in custom and in practice." *Id.* ¶ 73. He alleges that "upon information and belief, the use of force against [him] was not documented, processed or investigated according to LPD policy," and "LPD utterly ignored the Lynchburg Public Defender's discovery request for these Use of Force reports in [Wesley]'s criminal prosecution." *Id.* ¶¶ 74–75. Plaintiff alleges fourteen examples, which occurred in 2001, 2013, 2016, 2017, 2018, 2019, and 2020, in which LPD officers used force, and he asserts that based on these examples "[i]t is obvious that LPD has failed to properly train its officers in the use of force because of the multitude of instances in which officers have used force in violation of policy." *Id.* ¶¶ 76, 78. Three examples relate to use of a canine. *Id.* ¶ 76. First, he alleges that LPD officers "ordered [a] police K9 to attack," a man on January 23, 2016, while the man "was not resisting arrest or presenting any threat to the officers." *Id.* ¶ 76.c. Second, on November 28, 2016, LPD officers "struck [a man] several times and ordered [a] police K9 to attack [him], while he was not resisting arrest or presenting any threat to officers." *Id.* ¶ 76.e. Third, LPD officers "used a police canine against [a man] without justification" on July 18, 2018. *Id.* ¶ 76.h. Wesley further contends that "[u]pon information and belief," the March 11, 2021 and December 20, 2021 uses of force against him "were reported and investigated by LPD, but none of the officers were disciplined or counseled," and "[t]hus, the [City] has ratified the unconstitutional customs and practices of its officers." *Id.* ¶ 80.

Wesley claims that the City violated his Fourth and Fourteenth Amendment rights and engaged in gross, willful, wanton, and reckless negligence.[2] The City has moved to dismiss the claims against it, Dkt. 9. The issues having been fully briefed, the City's motion to dismiss is now ripe for review.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## Analysis

Municipal corporations are not vicariously liable under § 1983 for their employees' actions under a *respondeat superior* theory. *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011); *Pembaur v. Cinncinati*, 475 U.S. 469, 479 (1986). Thus, "a municipality cannot be held liable

---

[2] Wesley concedes that the City should be dismissed as a defendant from his gross negligence claims. Dkt. 12 at 3. Thus, these claims against the City will be dismissed.

*solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original). Instead, liability only attaches to the municipality directly, as opposed to its officials in their official capacity, in cases where the municipality causes the deprivation "through an official policy or custom." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted). The Fourth Circuit has recognized that

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

*Id.* (internal citation omitted). And a "policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees," but "will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (internal citations omitted).

Wesley has sufficiently alleged that the City condoned a practice so persistent and widespread as to constitute a custom or usage with the force of law. The Fourth Circuit recognizes custom by condonation, and "[u]nder this theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987)). Further, the Fourth Circuit has elaborated that, for such a claim to survive a motion to dismiss, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Id.* at 403 (internal citations omitted).

Wesley has alleged three examples that could be construed as excessive use of force by canines similar enough to Wesley's alleged two experiences that "municipal employees could reasonably infer from [them] tacit approval of the conduct at issue." *Milligan*, 743 F.2d at 230. Indeed, this Court previously found, in one of the examples Wesley provides—that "[o]n July 18, 2018, LPD officers used a police canine against Larry Booker without justification, thereby causing him injuries" Compl. ¶ 76.g; *see Booker v. City of Lynchburg*, No. 6:20-cv-00011, 2021 WL 519905 (W.D. Va. Feb. 11, 2021)—"Booker ha[d] stated a plausible claim based on an unconstitutional custom of excessive use of force." *Id.* at *4. And courts within the Fourth Circuit have allowed claims regarding an unconstitutional custom or practice by police to proceed when plaintiffs have alleged a similar number of incidents demonstrating such a custom or practice. *See, e.g.*, *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 535–36 (D. Md. 2020) (allowing *Brady* violations to go forward where the plaintiff alleged the police department fabricated evidence and suppressed exculpatory evidence in four cases resulting in wrongful convictions from 1981 to 1988, as well as his own 1987 wrongful conviction); *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 543 (E.D. Va. 2015) (concluding that an allegation regarding a single shooting five years before that which allegedly occurred in plaintiff's cases sufficiently supported a claim of unconstitutional custom of failure to adequately investigate excessive force claims). Thus, Wesley's § 1983 claims brought based on a theory of unconstitutional custom or policy will survive the motion to dismiss.

Wesley has also sufficiently alleged facts supporting *Monell* liability based on a failure to train theory. For such a claim to survive at the motion to dismiss stage, factual allegations must support that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*,

563 U.S. at 61 (citing *Bryan Cnty.*, 520 U.S. at 407). If so, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* (citing *Bryan Cnty.*, 520 U.S. at 407). Wesley alleges that "[t]he LPD maintains a facially constitutional policy that limits t[he] use of police canines to cases in which a physical threat or violence is imminent," but "LPD officers are not adequately trained to comply with their own facially constitutional use of force policy." Compl. ¶¶ 166–67. The Fourth Circuit has recognized that training deficiencies can include "tacit authorizations" of unconstitutional conduct. *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). The City did not specifically challenge the failure to train claim, and Wesley's allegations, if true, support reasonable inferences that the City was "put on notice that a new [training] program is called for." *Bryan Cnty.*, 520 U.S. at 407. Thus, his failure to train claims will survive the motion to dismiss.

The Court turns next to Wesley's failure to discipline claim. "When addressing a failure to discipline claim, 'an unconstitutional policy or custom based on evidence of a failure to discipline generally requires a showing of a pattern of misconduct in which there has been such a failure.'" *Green v. Mills*, No. 3:19-cv-906, 2020 WL 2850177, at *11 (E.D. Va. June 2, 2020) (quoting 13 Am. Jur. *Proof of Facts* 3d 1, § 12 (2020)). The City did not specifically challenge this claim either. And the Court concludes Wesley has sufficiently alleged that officers "were tacitly encouraged to continue self-developed practices of [excessive force] by the deliberate failure of responsible municipal officials to exercise discipline or corrective supervision to halt the widespread, known practices." *Spell*, 824 F.2d at 1392. Thus, his failure to discipline claims will also survive the motion to dismiss.

Further, Wesley has alleged sufficient facts for claims based in the City's ratification of the officers' actions, his final theory of *Monell* liability. Wesley contends that the City ratified its

officers' acts by determining they were "within policy" Compl. ¶¶ 187–96. "[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694). And "being the 'moving force' does not necessitate that a plaintiff allege that the [municipality] have knowledge of, or involvement in, the alleged constitutional violation from the outset." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 535 (4th Cir. 2022). Though the City contends that it cannot have been a moving force behind the alleged excessive force in this case because the LPD's alleged determination occurred after the use of force, Dkt. 19 at 4–5, the Fourth Circuit's precedent in *Starbuck* forecloses the argument. There, the Fourth Circuit held that a school board, in approving a suspension for a student allegedly uttering protected speech, acted as the "'moving force' behind the constitutional violation." 28 F.4th at 535. Similarly here, Wesley alleges that the LPD Chief, the LPD's final policymaker, "conducted a review of the use of force against [Wesley] . . . and concluded that all of its officers acted within LPD policy," Compl. ¶¶ 185, 187, 192, 194. Wesley has plausibly alleged that such approval constitutes the moving force behind the constitutional violation, and his claim under a ratification theory of *Monell* liability survive.

Wesley also seeks injunctive relief from the City, to "enjoin [the City] from engaging in unconstitutional use of force by the deployment of police dogs against subject[s] who pose no threat of harm." Compl. ¶ 253.[3] However, Wesley lacks standing to seek such an injunction. His

---

[3] Wesley acknowledges a typing error, as the heading of this Count is a duplicate of an earlier Count, prompting that the Count mistakenly alleges "GROSS, WILLFUL, WANTON AND RECKLESS NEGLIGENCE OF THE DEFENDANT OFFICERS AND THE CITY OF LYNCHBURG ON DECEMBER 20, 2021." Dkt. 12 at 3. But Wesley correctly notes that "the substance of the Count seeks injunctive relief against all defendants and does not allege any

standing to seek this relief would "depend[] on whether he was likely to suffer future injury from the use of the [canines] by police officers." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). To establish that, he would have to establish that "he would have another encounter with the police," and "either, (1) that *all* police officers in [Lynchburg] *always*" use canines against anyone they encounter, or "(2) that the City ordered or authorized police officers to act in such manner." *See id.* at 105–06; *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023) (holding that "[e]ven those who have suffered past harm … cannot seek injunctive relief … "unless a recurrence is likely"). As Wesley has not done so, his claim for injunctive relief will be dismissed.

## Conclusion

For the foregoing reasons, the Court will deny the City's motion to dismiss as to Wesley's § 1983 claims for damages. The Court will grant the motion as to his state tort law claims against the City, and the Court will also dismiss his claim for injunctive relief due to lack of standing.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this __18th__ day of May, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

independent tort." *Id.* The Court considers the substance of the Count to determine whether Wesley adequately stated facts sufficient to raise a plausible claim for injunctive relief.