IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CALVIN WESLEY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF LYNCHBURG, *et al.* )<br>)<br>    Defendants. ) | Civil Action: 6:23cv00012 |

**DECLARATION OF SERGEANT TODD RODES**

The undersigned, Sergeant Todd Rodes, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a sergeant in the Lynchburg Police Department ("LPD"), in the Professional Standards unit.

2.  From March 11, 2016 to March 11, 2021 (five years up to and including the date of the first incident involving Calvin Wesley), the LPD received 299,338 calls for service. A "call for service" means a call came in from dispatch for officer assistance and an officer responded.

3.  The LPD maintains a use of force policy and an internal investigations policy. True, accurate, and authentic copies of such policies that were in effect at the time of the incidents with Mr. Wesley are attached hereto (PD21-0602 and PD19-1601).

4.  Pursuant to the Use of Force and Internal Investigations policies, all complaints of excessive force are investigated by a LPD supervisor with a rank of sergeant or higher who was not involved in the use of force incident. In addition, all uses of force (regardless of whether a

complaint is received) are investigated that fall under the criteria discussed on pages 12-13 of the Use of Force policy, Section III(K)(2)(a)-(h).

      5.      In a use of force investigation, the investigating supervisor reviews the facts of each incident by interviewing the individuals involved and any available witnesses, reviews any available body camera, dash camera, or other camera footage, and all incident reports, which are generated by the officers involved. The supervisor then makes a report and generates findings and recommendations as to whether he or she believes the officer(s) violated the LPD's use of force policy. The supervisor's findings and recommendations are reviewed by each supervisor in the involved officer's chain of command. At each level, the LPD supervisor reviews the findings and recommendations of the supervisor below and makes his or her own recommendation. This process continues up the chain of command up to the Chief of Police. The Lynchburg Chief of Police is the final authority on use of force investigations, and he (or his designee if he is unavailable) makes the final decision on the findings and punishment, if necessary. This was the process in place at the time of the Calvin Wesley use of force investigations, and is the process that was done in those investigations. The process is documented on page 16 of the Use of Force policy, Section III(L).

      6.      From March 11, 2016 to March 11, 2021, there were three instances of sustained excessive force complaints.

      7.      With respect to the three sustained complaints, each officer found to have used excessive force was disciplined pursuant to the LPD Disciplinary System. A true and accurate copy of the Disciplinary System policy in place at the time of the incidents involving Calvin Wesley is attached hereto (PD19-0212).

8. The LPD provides the Lynchburg City Attorney full, unredacted copies of all use of force investigations, including the findings and recommendations.

9. Also, for exculpatory purposes, the Commonwealth's Attorney receives redacted copies of all use of force investigations that involve a suspect being prosecuted.

10. These redacted investigations inform the Commonwealth's Attorney "the force that was applied to that person."

11. Additionally, the LPD provides all use of force incidents to the City's Community Policing Advisory Group ("CPAG"), which is comprised of 29 total members—16 sworn LPD officers, 3 non-sworn LPD officers, and 10 non-law enforcement members of the community. The Group meets bi-monthly and reviews and discusses all use of force incidents.

12. An LPD captain attends the meetings and receives input from the group.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 18th day of December, 2023.

*[signature: S.A. Rodes]*

_____
Todd Rodes




| WRITTEN DIRECTIVE | No. PD19-0212 | Page: 1 of 10 |
|---|---|---|
| Subject: DISCIPLINARY SYSTEM | Effective Date: 8-26-19 | |
| | Supercedes/Amends: | PD 17-0212 |
| | Reference: | 26.1.4, 26.1.5 |

### I. Purpose

The purpose of this directive is to establish a fair and effective disciplinary system in accordance with the disciplinary policy established by the City of Lynchburg for employees of the Lynchburg Police Department.

### II. Policy

*33.1.5*

It shall be the policy of the Lynchburg Police Department to:
- recognize and reward appropriate behavior,
- identify and provide appropriate training to those employees who do not have the skills, knowledge, or abilities to perform satisfactorily in their assignments, and
- swiftly and effectively punish employees who willfully violate the law, City policy, or department policy or procedures.

### III. Procedure

A.  **GENERAL**

*26.1.4 A,C*

1. The disciplinary system will consist of the following provisions:

    a. *Commendations* - The specific procedures governing this part of the disciplinary system are outlined in the written directive *PD-0210 Department Commendations*.

    b. *Remedial Actions*

*26.1.4 B, 26.1.5*

    1) counseling session with immediate supervisor

    2) remedial training

    3) involuntary transfer

    4) professional counseling

**26.1.4 C**

  c. *Punitive Actions*

    1) oral reprimand

    2) written reprimand

    3) suspension

    4) transfer (punitive)

    5) demotion

    6) discharge.

2. Supervisors will treat each employee fairly and will take advantage of opportunities to apply constructive and positive measures in efforts to improve performance.

3. The severity of punitive action taken will depend upon the gravity of the offense and circumstances under which it occurred. The following five decision factors will be considered as guiding principles when making punitive punishment decisions.

  a. Employee Motivation – Was the employee acting in the public's best interest?

  b. Degree of Harm – How much damage did the action cause?

  c. Employee Experience – Should the employee have known better?

  d. Intentional / Unintentional Errors – Was the error committed on purpose?

  e. Employee's Past Record – Does the employee continually commit similar errors

**26.1.4 C**

4. Punitive action may be pursued in instances where an employee violates any of the following:

  a. federal or state laws

  b. City ordinances

  c. City code of standards of required conduct

**Disciplinary System**          page 3 of 10          PD19-0212

    d.    department *Rules of Conduct* and *Code of Ethics*

    e.    departmental directives, regulations, policies or procedures

    f.    verbal or written instruction of a supervisor.

5. A supervisor initiating any disciplinary system procedure shall consider such action as a *personnel matter*, and shall:

    a.    handle all documents concerning the action confidentially

    b.    not discuss the matter with any person uninvolved with the action

    c.    document such measures *only* within:

        1)    the affected employee's Personnel File (except as required in *Complaints Against Employees* PD-1601)

        2)    the supervisor's personal notes.

        3)    IAPro

6. For the purposes of this directive, *Personnel File* shall refer only to that file which:

    a.    contains an employee's employment history, *and*

    b.    is maintained through the office of the Chief of Police

B. <u>REMEDIAL ACTIONS</u>

*26.1.4 B, 26.1.5*

1. Supervisor/Employee Counseling Session

    a.    A *counseling session* will refer to an informal meeting for purposes of consultation, discussion or exchange of opinions concerning a specific matter.

    b.    A counseling session may result in:

        1)    immediate resolution of a problem

        2)    initiation of remedial training

        3)    consideration for employee transfer

        4)    referral of an employee for professional counseling.

**Disciplinary System**        page 4 of 10        PD19-0212

    c. A counseling session may be initiated by either a supervisor or an employee. Such counseling:

        1) will be promptly documented by the supervisor in the Daily Observation Report electronic system.

        2) may be documented in IAPro

        3) will not be documented in the employee's Personnel File.

**26.1.4 A, 33.1.5**

2. Remedial Training

    a. *Remedial training* will provide for the improvement of employee skills.

    b. Remedial training may be conducted by department employees, or employees of other agencies, as appropriate.

    c. Remedial training received will be documented in the employee's Personnel File and Training File and in IAPro.

    d. Remedial training shall be completed as soon as practical, normally within 30 days.

3. Involuntary Transfer

    a. Employee transfer as an *involuntary action* will involve the reassignment of an employee to another division, unit or bureau within the police department.

    b. The transfer of an employee as an *involuntary action* may be pursued in order to:

        1) improve employee productivity

        2) serve the best interests of the department or employee.

**26.1.4 B**

4. Professional Counseling

    a. *Professional counseling* may take a variety of forms: practitioners (including physicians, mental health counselors and clergy) may be utilized in resolving personal problems which affect job performance.

    b. Employees needing such assistance *may*:

**Disciplinary System**  page 5 of 10  PD19-0212

      1) be referred by a supervisor to the *Employee Assistance Program*, *or*

      2) seek assistance on their own, either through the *Employee Assistance Program* or other source.

   5. Remedial action may be implemented in conjunction with punitive action.

**26.1.4 C, 26.1.5**

  C. <u>PUNITIVE ACTIONS</u>

   1. Oral Reprimands

    a. *Oral reprimands* will usually be the first step in punishing an employee for a minor violation.

    b. The oral reprimand will be administered in a conference between the affected employee and the supervisor issuing the reprimand.

      1) The supervisor will advise the employee of the circumstances prompting the action.

      2) Proper procedures to correct the employee's performance will be discussed.

    c. An oral reprimand should be documented in the electronic *Daily Observation Report (DOR) system,* IAPro, and in the *personal notes* of the supervisor issuing the reprimand.

    d. An oral reprimand will not be documented in the affected employee's Personnel File.

    e. Oral reprimands for violations of the same or different rules, policies, and practices will be cumulative towards more severe punitive action.

   2. Written Reprimand

    a. *Written reprimands* may be given to an employee:

      1) for isolated, repeated or cumulative minor violations, *or*

      2) as the minimal corrective action for a more severe violation when, in the judgment of the issuing supervisor, a more stringent action is not justified.

    b. The issuing supervisor will document a written reprimand by including an entry in the electronic DOR system and by means of a letter to include the following information:

        1) the nature of the offense

        2) dates and circumstances surrounding any related oral reprimand(s) previously issued

        3) measures deemed appropriate to correct the situation

        4) future actions that may be taken if the situation is not corrected

        5) a statement regarding the grievance procedure and/or the *Law Enforcement Officer's Procedural Guarantees*.

    c. A copy of each written reprimand will be:

        1) forwarded by the issuing supervisor through the chain of command

        2) maintained in the employee's Personnel File as a permanent record and in IAPro.

    d. Written reprimands for violations of rules, policies, and practices will be cumulative towards more severe punitive action.

3. Suspension

    a. *Suspension* is defined as the temporary forced withdrawal of an employee from official duties, with an accompanying loss of pay.

    b. Suspension may be imposed in addition to punitive transfer or demotion for isolated, repeated or cumulative violations when either a lesser or a more stringent action is deemed inappropriate.

    c. The affected employee will be given notification in letter form by the immediate supervisor of the following:

        1) the reason for the suspension

        2) the duration of the suspension period

        3) a statement regarding the grievance procedure and/or the *Law Enforcement Officer's Procedural Guarantees*.

    d. A copy of the notification letter will be placed in the affected employee's Personnel File as a permanent record and the incident will be documented in the electronic DOR system and IAPro.

4. Transfer (Punitive)

    a. Employee transfer as a *punitive action* will involve the forced reassignment of an employee to another division, unit or bureau for punitive reasons.

    b. The transfer of an employee as a punitive action may be imposed in addition to suspension or demotion.

    c. The affected employee will be given written notification in letter form by their Deputy Chief of the following:

        1) the reason for the transfer

        2) the subsequent assignment

        3) a statement regarding the grievance procedure and/or the *Law Enforcement Officer's Procedural Guarantees*.

    d. A copy of the notification letter will be placed in the affected employee's Personnel File as a permanent record and the incident will be documented in the electronic DOR system and IAPro.

5. Demotion

    a. *Demotion* is defined as a de-elevation to a lower rank, with an accompanying reduction in pay.

    b. Demotion may be imposed in addition to punitive transfer or suspension in response to isolated, repeated or cumulative violations, when either a lesser or a more stringent action is deemed inappropriate.

    c. The affected employee will be given written notification in letter form by their Deputy Chief of the following:

        1) the reason for the demotion

        2) the subsequent rank and pay reductions

   3) a statement regarding the grievance procedure and/or the *Law Enforcement Officer's Procedural Guarantees*.

  d. A copy of the notification letter will be placed in the affected employee's Personnel File as a permanent record and the incident will be documented in the electronic DOR system and IAPro.

 6. Discharge

  a. *Discharge* will be defined as the involuntary termination of employment, and will represent the most severe form of internal punishment.

  b. Discharge may be imposed in response to isolated, repeated or cumulative violations.

  c. The Deputy Chief will forward a letter to a discharged employee (except those in the initial employment period) to include the following:

*26.1.7 A*

   1) the reason for discharge

*26.1.7 B*

   2) the effective date of the discharge

*26.1.7 C*

   3) the status of fringe and retirement benefits after discharge

   4) a statement regarding the grievance procedure and/or the *Law Enforcement Officer's Procedural Guarantees*.

  d. A copy of the notification letter will be placed in the affected employee's Personnel File as a permanent record and in IAPro.

D. <u>PRE-PUNITIVE REVIEW HEARING</u>

 1. In accordance with the *Cleveland Board of Education v. Loudermill* Supreme Court Decision, a hearing will be required before any of the following punitive actions are imposed:

  a. Suspension

  b. Transfer (Punitive)

  c. Demotion

  d. Discharge.

2. A supervisor who believes one of the punitive actions listed in III, D-1 is appropriate will:

    a. document all related information and recommendation for punitive action in memorandum form, to include:

        1) the offense

        2) an explanation of the facts

        3) the recommended punitive action

    b. forward the memorandum through the chain of command to the appropriate Deputy Chief, with each level attaching their recommendations.

3. The Deputy Chief will be responsible for:

    a. providing the employee with an informal hearing as an opportunity to respond to the recommendation prior to any punitive action being taken.

        1) The Deputy Chief will notify the employee by letter of the date and time of the hearing and include a copy of the memorandum documenting the recommended punitive action by the supervisor.

        2) The hearing will be scheduled no less than five business days from receipt of the recommendation unless the employee agrees to have it held sooner.

        3) The purpose of the hearing is to provide an opportunity to determine whether there are reasonable grounds to believe that the charges against an employee are true and support the proposed punitive action(s).

        4) The hearing does not have to be a full adversarial, evidentiary hearing: the employee does not have to be given an opportunity to have legal representation at the hearing, to present witnesses on his behalf, or to cross examine the City's witnesses.

        5) The hearing requirement of *Loudermill* is satisfied by an informal meeting, and the Deputy Chief will be the final authority on deciding who participates.

    b. making *final judgment* as to the punitive action, if any, to be taken.

1) The Deputy Chief will review the facts of the discipline-related incident(s):

    a) As documented by command staff members in recommending discipline

    b) as documented, reported or related by the affected employee, by supervisors or by witnesses.

2) The Deputy Chief will advise the employee of his decision in writing within five business days after the pre-disciplinary hearing, to include:

    a) the action to be taken

    b) the reason for the action being taken

    c) a statement regarding the grievance procedure and/or the *Law Enforcement Officer's Procedural Guarantees*.

c. notifying the supervisor involved of what disciplinary action will be taken.


*Original Signed*
_____
Ryan M. Zuidema
Chief of Police

August 26, 2019
_____
Date

{00484171.DOCX }